No. 12,208.

MRS. CARRIE AUGUSTA O'NEILL VS. CONRAD LEINICKE.

Prescription only begins to run in favor of the father who has received money for his daughter from the time demand has been made for the same, or from the date of settlement between them, showing balance due.

When money has been remitted to the father by the grandfather of his daughter, and is followed by a letter of advice which directs the investment of the capital, or a part of it, for the benefit of his granddaughter, the child of his daughter, with full discretion to the son-in-law to invest and control the disposition of the money, and there is nothing said in the letter, other than as to the use of the interest by the son-in-law for household expenses, about the money being for the individual use of the son-in-law, it will be interpreted to be as to the capital a donation to the granddaughter and not to the father.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Saunders & Miller* (and *Walter Hyde Saunders*, of Counsel), for Plaintiff, Appellee.

*Frank L. Richardson* and *Philip H. Mentz*, for Plaintiff, Appellee.

Argued and submitted December 4, 1896.
Opinion handed down December 14, 1896.
Rehearing refused January 4, 1897.

The opinion of the court was delivered by

McENERY, J. The plaintiff brought this suit to recover from her father the sum of twelve thousand three hundred and fifty-seven dollars.

The grandfather transmitted to her father this amount of money which she urges was intended for her. The father claims the amount, less a certain amount which he invested for his daughter. The mother of the plaintiff died before this sum was transmitted. The money was left in the father's hands, without objection on the part of plaintiff, until the institution of this suit.

There was judgment for plaintiff for the amount of the sum transmitted, less amount invested.

The money was sent without any letter of advice. It was followed by the following instructions to the father:

" Father to save costs of court did not want to call it (the remittance) an *inheritance;* and in any event (uberhaupt), father was of the opinion that you would keep it *secret,* and make no communication of it to any one, *not even to Carrie;* for only too easily, on such occasions, there appear flatterers (parasites) of every kind (shape); but things that happened can no more be changed. But, as you now, as Lina's rightful heir, are unconditional disposer, and have the right to dispose of it by testament, father only desires the wish expressed that you should apply (invest) and administer this *capital* entirely according to your own will and judgment, without allowing yourself to be influenced by any one; whether you will use the *interest* (income) in your household, or donate it as dowry (marriage gift) to Carrie, is left entirely to your discretion (judgment). Only father would wish (would like) that you would invest *surely* (securely) a fixed amount for *Carrie,* that it may in age afford a certainty and not slip through the fingers. In any event, father expects positively that *Carrie, for her own advantage, conform unconditionally to the dispositions* (unerdaungen) *of her father.* You know father well enough to know that he is distinctly not in accord with the *American woman-emancipation.*"

There is a conflict, in fact a contradiction in the testimony of the daughter and father in this case. Happily, we are not called upon to say which is the more reliable, the declarations of daughter or father. The contradictions in this testimony relate more particularly to the construction which the father placed upon the letter, advising him as to the disposition of the sum remitted. This letter is not a contract or agreement of dubious import to be interpreted by the conduct of the parties in relation to it and the interpretation they placed upon it.

The language and declarations of the grandfather are alone to be considered. If the money was intended as a donation to the father, but construed by the parties to be for the daughter, their construction could not destroy the donation and take it from the father, when discovering his error, he asserted his claim to the money. Nor would the father's belief, and his acts based upon it, that it was a donation to him, and acquiesced in by the daughter, who gave the same interpretation to the language of the grandfather, destroy the daughter's right to assert her claim when she discovered her error and that of her father.

We will therefore eliminate the testimony of both father and daughter, except so far as it relates to the immediate production in evidence of the declarations of the grandfather contained in the above letter.

The father was not heir to his deceased wife. There was no estate for him to inherit through her from the grandfather, as he was alive. Even admitting that he was heir to his wife, the letter says nothing about the remittance being an advance to the father as heir.

The only reasonable interpretation that can be given to the expression in the letter: "But as you now as Lina's rightful heir are unconditional disposer and have the right to dispose of it by testament, father only desires the wish expressed that you should apply (invest) and administer this capital entirely according to your will and judgment without allowing yourself to be influenced by any one," etc., is that the grandfather considered the father, as the surviving spouse, the guardian of his daughter's welfare, as his wife had been when living. The sentence, we believe, was used as a synonym to express the power of the father over the daughter, thus impressing upon him that as the guardian of his daughter, her will should be subjected entirely to his own in the disposition of the money. He was to invest the capital, and the use of the interest was left to his discretion to be employed in his household expenses or for the dowry of his daughter. "In any event father expects positively that Carrie, for her own advantage, conform unconditionally to the dispositions of her father." Here is a declaration that in the investment of the money the daughter will not oppose her will to that of her father. This declaration is totally at variance with the dominion which the father would have over the money had it been intended as a donation to him.

Through the whole letter of advice there are expressions which indicate that the remittance was not intended as a donation to the father. The letter exhibits a fear on the part of the grandfather that the money would "slip through the fingers" of his daughter, if she had control of it, and she was not to be made acquainted with the receipt of the money for fear that "flatterers" would despoil her of it.

There is not, as we have said, a syllable in the letter to indicate that the remittance was intended as a donation to the father, except, perhaps, the language quoted " as Lina's rightful heir," etc. This

declaration follows that part of the letter in which the grandfather desires the remittance to be kept secret from "Carrie" for fear of "flatterers," showing, in our opinion, that the grandfather had in his mind the duties which the father, as surviving parent, owed to the daughter, and admonished him of them.

It is argued that the father had taken care of his brother-in-law, an unfortunate brother of the wife, and the grandfather had intimated his pleasure to make compensation. But there is nothing in the letter to show that the remittance was intended as a remunerative donation. If it had been, the donor could not and would not have placed restrictions upon its disposition.

The letter of advice means, in a just interpretation of it, considering its language in connection with the relationship of the parties, that the grandfather remitted the money for his daughter, the capital to be invested for the daughter, and the interest to be at the disposal of the father for household expenses, to defray in part the expenses of the daughter, unless the father saw proper to use it for her as dowry. If there should be a demand upon the father to use a part of the capital for his daughter, a certain part of it, at all events, had to be invested for the daughter.

The letter in the record is a translation, but we doubt not that the original text would more exactly define its meaning, and accord with our interpretation.

The defendant pleads the prescription of ten years. It has no application to the facts in this case. The father was the custodian of the money for his daughter. The prescription could only commence to run from a demand for its return to the daughter, or from a settlement between them. He held the money as a fiduciary.

The daughter does not claim the revenues of the money. The District Judge declined to give judgment decreeing the daughter the owner of the house purchased in the father's name with part of the money, but gave judgment for the amount due, after deducting investments which had been made by the father in the name of his daughter.

Judgment affirmed.